IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


RICKEY R. SWIFT                                                                                           PLAINTIFF

             v.                          Civil No. 1:07-cv-01055

SGT. McAULIFEE, El Dorado
Police Department                                                                                        DEFENDANT


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Rickey Romarrell Swift (hereinafter Swift) filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Defendant filed a summary judgment motion (Doc. 8). To assist Swift in responding to the motion, a questionnaire was propounded (Doc. 11). Swift filed a timely response to the questionnaire (Doc. 12). Defendant filed a reply (Doc. 13). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

**I. Background**

The Defendant, Kevin McAuliffe (hereinafter McAuliffe), is employed with the El Dorado Police Department as a sergeant and was employed in that capacity in 2007 when the events at issue in this lawsuit occurred. *Affidavit of Kevin McAuliffe* at ¶ 2 (hereinafter *McAuliffe Aff.*). In McAuliffe's affidavit he indicates the events at issue in this case occurred on March 9, 2007. *Id.* at ¶ 3. Swift maintains the events at issue in this case occurred on April 9, 2007. *Plaintiff's Response* (Doc. 12)(hereinafter *Resp.*) at ¶ 1.

According to McAuliffe, on March 9, 2007, he responded to an officer in need of assistance call. *McAuliffe Aff.* at ¶ 2; *Resp.* at ¶ 2. The officer who called for assistance was in the process of placing an individual under arrest. *McAuliffe Aff.* at ¶ 4; *Resp.* at ¶ 3. When McAuliffe arrived a crowd had gathered around the officer and the suspect. *McAuliffe Aff.* at ¶ 4. McAuliffe indicates the crowd was within several feet of the officer and the suspect. *Id.* at ¶ 5. McAuliffe summarizes what occurred as follows:

> I immediately went to control the crowd and to keep any member of that crowd from interfering with the arrest. Robert Swift was a member of that crowd. Swift was visibly intoxicated; he was slurring his speech and smelled of intoxicants. While attempting to control the crowd I heard Swift remark, "I got his back." It was unclear whether Swift was stating that he had "the suspects back" or "the officer's back."
>
> After making this statement, Swift began to approach myself, the officer, and the suspect. Swift's movements towards me placed him very close to me, and based on his close proximity I became very uncomfortable. After Swift entered my comfort zone, I instructed him to "take a step back." Swift moved nearer to my face and responded, "I already moved back bitch."
>
> I then placed my left hand on his chest and moved him back and instructed him to stay back. Swift's actions constituted the crime of obstruction of governmental operations and, based on his intoxication, also the crime of public intoxication. Instead of arresting Swift immediately, I waited until the officer had arrested the suspect and safely placed him in custody. Once the suspect was secure, I went back to the crowd to arrest Swift.
>
> Swift, however, did not want to be arrested peacefully and thus resisted arrest. In resisting, Swift moved away from me so that I could not place him in custody. In order to secure Swift, I placed my hands on him. Swift again, attempted to evade me and moved back against a nearby truck. While Swift was against the truck, I was able to grab a hold of him, yet he continued to resist.
>
> In the ensuing tussle, Swift and I fell to the ground. While on the ground, I was able to subdue Swift and place handcuffs on him. Once placed under arrest, another officer on the scene escorted Swift to a patrol car and transported him to the El Dorado Police Department.
>
> I used a reasonable amount of force to subdue Swift. The force I used was not excessive and was appropriate for the situation.

>I did not kick Swift at any time during his arrest. Swift did not complain of any injury sustained during the arrest while at the scene. During the tussle and ensuing fall during Swift's arrest, I sustained an injury to my back. I received medical treatment for this injury and was unable to work for nearly a week.

*McAuliffe Aff.* at ¶¶ 6-32.

According to Swift, before the back-up officers arrived there was no crowd. *Resp.* at ¶ 3. Swift indicates the only people present when McAuliffe arrived were himself, his wife, and Cynthia Hale. *Id.* at ¶¶ 3-4. After the other officers arrived, Swift indicates other people arrived. *Id.* Swift also maintains the suspect was already handcuffed when McAuliffe arrived at the scene. *Id.* at ¶ 17. Swift denies he was intoxicated but concedes he could have smelled of alcohol. *Resp.* at ¶ 8. After being told to stay back, Swift indicates he moved back away from all the officers. *Id.* at ¶ 11. He disagrees he was close to McAuliffe and maintains instead that McAuliffe charged Swift from behind. *Id.* at ¶ 12. Swift denies ever approaching McAuliffe or making a vulgar remark to him. *Id.* at ¶ 13 & ¶ 14.

According to Swift, McAuliffe charged him from behind then:

>punched me in my jaw grabbed me by my right wrist. Twisted my arm behind me with his left arm he put it arround my throat. Picked me up and started going backwards toward the road with me. Swing me arround chocking me other officers showed up and start helping him. I then waken up on the ground been put in hand cuffs.

*Resp.* at ¶ 15.

Swift indicates he was charged with the crimes of obstruction of governmental operations and public intoxication. *Id.* at ¶ 16. He asserts he was falsely accused but didn't have the funds to appeal at that time. *Id.*

Swift denies resisting being arrested in anyway. *Resp.* at ¶ 19. He asserts he did not fight, kick, or punch. *Id.* He also denies moving away from McAuliffe. *Id.* at ¶ 20. Swift does indicate

that McAuliffe carried him against a truck and braced himself against it while choking Swift. *Id.* at ¶ 22. Swift also agrees the two fell to the ground and that while on the ground he was handcuffed. *Resp.* at ¶ 24 & ¶ 25(A). However, he maintains he was unconscious before he hit the ground. *Id.* at ¶ 25(C).

With respect to the remark McAuliffe attributes to him, Swift states after he had been beaten by McAuliffe, was in custody, and was being taken to the patrol car he made the statement that he had the other officer's back. *Id.* at ¶ 9. According to Swift, McAuliffe said "you peoples don't know me these's is my streets." *Id.* at ¶ 26. Swift indicates he replied that he had surveillance. *Id.*

When they reached the car, Swift also contends McAuliffe "grabbed the handcuffs in the middle started stomping me in my back pushing me in the police car." *Resp.* at ¶ 28(A). As a result of McAuliffe's use of force against him that day, Swift maintains he suffered neck injuries, shoulder injuries, and back pain. *Id.* at ¶ 29(B). He states he is undergoing surgery to try to correct the injury to his neck. *Id.* He indicates he went to the emergency room a couple of days after the incident and later went to the chiropractor and his family doctor. *Id.* He states they could not help him and he was referred to UAMS (University of Arkansas for Medical Sciences) in Little Rock where he is still undergoing treatment. *Id.*

Swift did not tell McAuliffe or any other officer that evening that he was injured. *Resp.* at ¶ 28(C). Swift indicates he was charged with resisting arrest as a result of the incident and was found not guilty. *Id.* at ¶ 30. With respect to McAuliffe's back injury, Swift states the police report from that day does not show that McAuliffe injured his back. *Resp.* at ¶ 31. However, Swift indicates "the paper from [McAuliffe's] lawyer said he was." *Id.*

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  The Arguments of the Parties

McAuliffe contends he is being sued in his official capacity only.  As there is no evidence of an unconstitutional custom or policy, he contends he is entitled to judgment in his favor. Alternatively, McAuliffe argues Swift has presented no evidence to support his allegations that excessive force was used against him.  He maintains the amount of force he used was reasonable and appropriate based on Swift's active resistance and evasiveness.  Finally, McAuliffe argues although

Swift has now made claims of numerous injuries he has failed to substantiate those injuries with an affidavit, deposition testimony, or any other evidence.

Swift indicates he intended to assert claims against Defendant in both his individual and official capacities. Swift asserts that he obeyed McAuliffe's commands to stay back and did not resist in anyway. Despite his compliance, Swift maintains McAuliffe punched him, choked him to the point of unconsciousness, and stomped him in the back. Swift maintains he suffered injuries for which he is still seeking medical treatment today.

## IV. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the Defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

### A. Official and Individual Capacity Claims

Under § 1983, a Defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a Defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised Plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the Plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

A review of the complaint in this case shows that Swift has failed to specifically plead whether McAuliffe was being sued in his official or individual capacity. However, the court has an

-7-

obligation to liberally construe a *pro se* complaint. *Haines v. Krener*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). *See also White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding *pro se* petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). In so doing, we must keep in mind that the Plaintiff is without legal expertise and he prepared his own pleading. *Bracken v. Dormire*, 247 F.3d 699, 704 (8th Cir. 2001). Furthermore, in responding to the summary judgment motion, Swift indicated he intended to sue McAuliffe in both his individual and his official capacity. *Resp.* at ¶ 34. I therefore construe the complaint to be asserting both an individual capacity claim and an official capacity claim against McAuliffe.

As noted above, official capacity claims are the equivalent of claims asserted against the City of El Dorado. Under § 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. However, a governmental entity, here the City of El Dorado, may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom. *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir.1998).

Thus, the City of El Dorado would be liable for McAuliffe's conduct only if it had a policy or custom that caused Swift's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). In the absence of a written policy, Swift must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). Swift must show that the City of El Dorado "through its deliberate conduct ... was the 'moving force' behind the injury alleged." *Brown*, 117 S. Ct. at 1388.

"[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994)(citation omitted). "Such a government custom of laxness or inaction must be the moving force behind the constitutional violation." *Id*. A governmental body may also be held accountable based on a failure to train and supervise adequately under certain circumstances. *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

In this case, Swift was asked whether he contended a custom or policy of the City of El Dorado was the moving force behind the alleged violation of his constitutional rights. *Resp.* at ¶ 33. He responded yes. *Id*. He was then asked to described the custom or policy and how it operated to deprive him of his federal constitutional rights. *Id*. Swift responded that "he" stated in the police report in two places that Swift did not try to help the other officer. *Id*. Swift indicates he did try to help the other officer and the officer testified to this in court. *Id*. Swift continues as follows:

> I was 2 feet from my front door at least 10 feet from them officer came to where I was and came from behind. After he chocked me and slammed me on the ground he was saying in a loud voice that you peoples gon learn that these are my streets. Then after that that's when he started stomping me in my back after those words, you peoples you don't know me these are my streets I run these's streests. There was a lady across the street filming the whole thing and someone said that you been caught on tape and he ran after her.

*Id*.

These allegations do not establish a pattern of widespread unconstitutional conduct or the existence of a custom or policy that was the moving force behind the alleged violation of Swift's constitutional rights. Any suggestion of the existence of a basis to hold the City of El Dorado liable is wholly lacking. There is simply nothing from which the Court could conclude a genuine issue of

fact exists as to the City's liability. Defendant is therefore entitled to summary judgment on Swift's official capacity claims.

**B.  Excessive Force Claim**

The Fourth Amendment to the United States Constitution prohibits unreasonable seizures of the person. *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). An unreasonable seizure occurs when excessive force is used during the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). In analyzing Fourth Amendment excessive force claims, the court applies a reasonableness standard. This standard was discussed by the Eighth Circuit in *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006). In *Samuelson*, the court noted:

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 22-27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). To determine if the officers used excessive force, we pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). Reasonableness is determined from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted). Additionally, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396, 109 S. Ct. 1865 (internal quotations and citations omitted). Furthermore, our inquiry is an objective one, "without regard to [the officers'] underlying intent or motivation." *Id.* at 397, 109 S. Ct. 1865 (citations omitted).

*Samuelson,* 455 F.3d at 875 -876.

The facts, viewed in the light most favorable to Swift, demonstrate there are genuine issues of fact that preclude summary judgment in McAuliffe's favor. McAuliffe's arguments that he used only a reasonable amount of force depend on my accepting as true his version of the events that day. McAuliffe has offered his affidavit in which he asserts Swift actively resisted and was evasive.

Swift in contrast has provided a version of the facts that contradicts in virtually every aspect McAuliffe's version of the events. Swift denies he resisted in anyway and maintains he obeyed McAuliffe's orders to stay back. Swift signed his response declaring "under penalty of perjury that the foregoing is true and correct." *See Resp.* at page 22. This verification is the equivalent of an affidavit supporting his response to the summary judgment motion. 28 U.S.C. § 1746. *Cf. Roberson v. Hayti Police* Department, 241 F.3d 992, 995 (8th Cir. 2001)("Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion").

Here, McAuliffe's and Swift's versions of the events of that day stand in direct contradiction to each other. Clearly, there are genuine issues of material fact that preclude summary judgment in McAuliffe's favor. I am not free on a summary judgment motion to believe McAuliffe's version of the events of that day and disbelieve Swift's.

## V. Conclusion

I therefore recommend that the Defendant's motion summary judgment (Doc. 8) should be granted in part and denied in part. Specifically, I find that the complaint should be construed to be asserting both individual and official capacity claims against the Defendant Kevin McAuliffe. I

recommend that the motion for summary judgment be granted on the official capacity claim asserted against McAuliffe. I further recommend that the motion be denied on the individual capacity claim asserted against McAuliffe.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of August 2008.

>  /s/ Barry A. Bryant
> HON. BARRY A. BRYANT
> UNITED STATES MAGISTRATE JUDGE